# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL CASE NO. 5:09-CV-007-RLV-DCK

| | | |
|---|---|---|
| **WANDA K. TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion For Summary
Judgment" (Document No. 10) and "Plaintiff's Brief" (Document No. 11), filed June 19, 2009; and
Defendant Commissioner's "Motion For Summary Judgment" (Document No. 14) and
"Memorandum In Support Of The Commissioner's Decision" (Document No. 15), filed September
2, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.
§636(b)(1)(B), and these motions are ripe for disposition.

After careful consideration of the written arguments, administrative record, and applicable
authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary
Judgment" be denied; Defendant's "Motion For Summary Judgment" be granted; and that the
Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff Wanda K. Taylor ("Plaintiff"), through counsel, seeks judicial review of an
unfavorable administrative decision on her application for disability benefits. On March 29, 2004,
Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB")
under Title II of the Social Security Act, 42 U.S.C. § *et seq.,* alleging an inability to work due to a

disabling condition beginning February 1, 2002. (Transcript of the Record of Proceedings ("Tr.") 18). The Commissioner of Social Security (the "Commissioner") denied Plaintiff's application initially on October 6, 2004, and again after reconsideration on January 4, 2005. (Tr. 18). Plaintiff filed a timely written request for a hearing on March 11, 2005. On August 10, 2007, Plaintiff appeared and testified at a hearing before Administrative Law Judge Robin R. Palenske ("ALJ"). (Tr. 36). On or about February 5, 2008, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 15).

Plaintiff filed a request for review of the ALJ's decision on March 28, 2008, which was denied by the Appeals Council. (Tr. 6). The February 5, 2008 decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request on August 6, 2008. (Tr. 6). Plaintiff's action seeking a reversal of the ALJ's determination was filed in this Court on January 16, 2009. (Document No. 1). The pending motions are now ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than

create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between February 1, 2002, and the date of his decision.[1] To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

On February 5, 2008, the ALJ found that Plaintiff was not "disabled" at any time between February 1, 2002, and the date of her decision. (Tr. 18).  The Social Security Administration has

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) quoting 42 U.S.C. § 423(d)(1)(A).

established a five-step sequential evaluation process for determining if a person is disabled. (20

C.F.R. § 404.1520(a)). The five steps are:

> (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

> (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

> (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

> (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

> (5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

(20 C.F.R. § 404.1520(a)(4)(I-v)). In this case, the ALJ determined at the fifth step that the Plaintiff

was <u>not</u> disabled.

Specifically, in this case, the ALJ first concluded that Plaintiff had not engaged in any

substantial gainful activity since her alleged disability onset date. (Tr. 20). At the second step, the

ALJ found that in combination Plaintiff's seizure disorder with two observed seizures of uncertain

etiology; complaints of headaches with marked drug-seeking behavior; and allegations of

depression/anxiety with marked drug-seeking behavior, were severe impairments. (Tr. 20).[2] At the

third step, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart

P, Appendix 1. (Tr. 30). Next, the ALJ assessed Plaintiff's RFC and found that she retained the

capacity to perform a full range of work, with the following limitations:

> she should not do work which exposes her to hazards such as
> unprotected heights (ladders, scaffolding, and the like) or open and/or
> dangerous machinery. She would be limited to simple routine and
> repetitive tasks which do not involve a high level of production stress
> (such as piece work) and could not do work involving extensive
> interpersonal interaction. There are no exertional limitations.

(Tr. 31). In making this finding, the ALJ considered all symptoms and the extent to which these

symptoms can reasonably be accepted as consistent with the objective medical evidence and other

evidence. The ALJ also considered opinion evidence. (Tr. 32).

At the fourth step, the ALJ found that Plaintiff could not perform any of her past relevant

work as a shipping and receiving clerk and hotel clerk. (Tr. 34). At the fifth and final step, the ALJ

concluded based on the testimony of a vocational expert and "considering the claimant's age,

education, work experience, and residual functional capacity" that jobs existed in significant

numbers in the national economy that Plaintiff could perform. (Tr. 35). Specifically, the vocational

expert testified that according to the factors given by the ALJ, occupations claimant could perform

included Laundry Worker II and Hand Packager. (Tr. 35). Therefore, the ALJ concluded that

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a
*de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v.
Yuckert, 482 U.S. 137 (1987).

Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between February 1, 2002, and the date of her decision, February 5, 2008.  (Tr. 35-36).

Plaintiff on appeal to this Court makes the following assignments of error:  (1) the ALJ violated 20 C.F.R. §404.1527 in failing to set forth good cause for her rejection of the opinions of Ms. Taylor's treating physician, Dr. Patel;  (2) the ALJ failed to evaluate the claimant's mental impairment and resulting functional limitations as required by 20 C.F.R. §404.1520(a);  (3) the ALJ erred as a matter of law in evaluating Ms. Taylor's subjective complaints in failing to apply the regulatory factors set forth in SSR 96.7p and 20 C.F.R. §404.1529 and in making a conclusory credibility finding in violation of SSR 97-7p;  (4) the ALJ failed to recontact the claimant's treating medical provider as required by 20 C.F.R. §404.1512(e);  and (5) the ALJ violated SSR 00-4p and her duty to fully develop the record by failing to examine or inquire of any conflicts between the vocational expert's testimony and the DOT.  (Document No. 11).  The undersigned will discuss these contentions in turn.

**A.  The Opinions of Plaintiff's Treating Physician, Dr. Patel**

In her first assignment of error, Plaintiff argues that the Commissioner did not meet his burden of proof by failing to "set forth good cause for her rejection of the opinions of Ms. Taylor's treating physician, Dr. Patel." (Document No. 11, p. 10).  The contested opinion refers to Dr. Patel's "Psychiatric/Psychological Impairment Questionnaire," in which Dr. Patel noted that Plaintiff had moderately limited or markedly limited functioning in the following categories: understanding and memory, sustained concentration and persistence, social interactions, and adaptation.  (Tr. 473 - 480).  Plaintiff relies on 20 C.F.R. §404.1527(d)(2), which provides that:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors . . . in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §404.1527(d)(2) (2010); (Document No. 11, p.10).

Plaintiff notes that the regulation requires an ALJ to give a treating physician's opinion controlling weight "if they [the opinions] are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence of record." (Document No. 11, p.10). Plaintiff argues that the only reason the ALJ provided for rejecting Dr. Patel's opinion was that "Dr. Patel's diagnoses are based, almost completely, on the claimant's verbal reports of subjective symptoms." (Document No. 11, p.11) (citing Tr. 29). Plaintiff contends that the reasoning cited by the ALJ is based upon her own suppositions and violates SSR 86-8, which cautions that, "reasonable inferences may be drawn, but presumptions, speculations, and suppositions should not be substituted for evidence." SSR 86-8, "The Sequential Evaluation Process," 1986 WL 68636 at *8 (1986). Plaintiff argues that "all of Dr. Patel's treatment records contain his clinical observations and conclusions based upon his examination and expertise;" thus Plaintiff concludes that the ALJ should have assigned controlling weight to Dr. Patel's opinions. (Document No. 11, pp.12-13).

Defendant argues that the ALJ properly afforded little weight to Dr. Patel's opinion because "it was based almost entirely on Plaintiff's reports of subjective symptoms given that Dr. Patel reported little in the way of his observations of Plaintiff during her visits." (Document No. 15, p.5) (citing Tr. 27, 29). Defendant notes that the ALJ "found that many of Plaintiff's statements were drug-seeking and that her statements about subjective symptoms were not credible." (Document No. 15, p.5) (citing Tr. 29). Since the Plaintiff's own subjective statements were deemed to be <u>not</u> credible by the ALJ, it was proper that the ALJ also assigned little weight to Dr. Patel's assessment, which was based "on the claimant's verbal reports of subjective symptoms and some signs/behaviors that he has observed." (Tr. 29). In addition, Defendant also argues that "Dr. Patel's examination and counseling notes do not support the moderate and marked limitations indicated in the June 2007 assessment." (Document No. 15, p.6).

The undersigned finds the Defendant's arguments to be persuasive on this issue. Dr. Patel's own treatment notes are inconsistent with the "moderate to markedly limited" functional limitations identified in the June 2007 assessment. (Tr. 473-480). For instance, Dr. Patel wrote in a Progress Note on May 31, 2006, that Plaintiff was "well oriented, has improved with attention concentration span. She has still a lot of anxiety and reports her mood being quite irritable. Affect is appropriate . . . Her judgment is improved and continuing to improve. She did not exhibit any sedation stiffness, restless, or involuntary muscle movement." (Tr. 496). Dr. Patel concluded his remarks by noting that Plaintiff "is beginning to see the change/improvement in her condition." On July 12, 2006, Dr. Patel recorded that Plaintiff's medication was helping her "a great deal." (Tr. 494). At this visit, Dr. Patel also noted that Plaintiff's attention/concentration was "good," her insight was "improving," her intelligence was "borderline," and her judgment was "fair." (Tr. 494). After discussing the

opinion of Dr. Patel, the ALJ comments, "She [Plaintiff] has continued to see Dr. Patel regularly with complaints of depression and stress, but Dr. Patel has written several times that she was 'improving steadily' and 'feeling better with meds.'" (Tr. 27). The ALJ again identifies inconsistency within Dr. Patel's treatment notes when she writes,

> Dr. Patel writes in Ex. 15F that the claimant has a long list of signs and symptoms which, if present, would indicate the presence of severe anxiety and depression. He also indicates that the claimant has signs/symptoms of a post-traumatic stress disorder; the claimant's mother had recently died, and he may be thinking of her sadness after that. Although he alleges that these signs are present, his records do not document evidence of social withdrawal, crying spells, paranoid and delusional thinking, forgetfulness, hostility/irritability, sleep disturbance, panic attacks, inability to eat, fear of crowds, and social isolation. These "signs" can therefore only be based on what the claimant told him."

(Tr. 29).

The undersigned finds that the ALJ properly afforded little weight to Dr. Patel's June 2007 assessment of Plaintiff's functional limitations because there was clear evidence within Dr. Patel's own treatment notes that Plaintiff was making improvement and that medication was successful in providing some relief of Plaintiff's symptoms. (Tr. 27). Based upon this evidence, the ALJ complied with the requirements of 20 C.F.R. §404.1527 that a treating physician's opinion be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §404.1527. In this instance, Dr. Patel's own treatment notes contradicted his conclusions about Plaintiff's functional capabilities, and the ALJ properly discounted this opinion.

B. **Plaintiff's Mental Impairment and Resulting Functional Limitations**

9

Next, Plaintiff asserts that the ALJ "committed reversible error in failing to evaluate the claimant's mental impairment and resulting functional limitations as required by 20 C.F.R. §404.1520a." (Document No. 11, p.13). Plaintiff's argument involves the procedure for evaluating mental impairments set forth in 20 C.F.R. §404.1520a, which guides an ALJ in making a determination about the effects of a Plaintiff's mental impairments on functional capacity. See 20 C.F.R. §404.1520a(b)-(e). In the present case, Plaintiff reasons that, "since the ALJ found depression/anxiety to be a severe impairment that means she found that it would interfere with Ms. Taylor's ability to work. That being the case, a finding of mild in all the functional categories outlined in 20 C.F.R. §404.1520a is invalid." (Document No. 11, p.14). In support of this contention, Plaintiff relies upon the following part of 20 C.F.R. §404.1520a:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §404.1520a(d)(1). Plaintiff argues that "this error requires remand . . . to properly apply the technique stated in 20 C.F.R. §404.1520a in light of the finding of the severe impairment of depression/anxiety. (Document No. 11, p.14).

Defendant argues that the ALJ properly applied the technique and documented her decision as required by 20 C.F.R. §404.1520a. (Document No. 15, p.8). Defendant points out that the ALJ found Plaintiff's alleged depression/anxiety to be a severe impairment when combined with Plaintiff's "marked drug-seeking behavior." (Document No. 15, p.8). Defendant notes that "it was based upon these limitations [Plaintiff's depression/anxiety caused by her drug-seeking behavior], not limitations in activities of daily living; social functioning; concentration, persistence, or pace;

or, episodes of decompensation, that the ALJ found that Plaintiff's mental impairment was a "severe" impairment. (Document No. 8, p.8).

The undersigned finds Defendant's arguments persuasive on this issue. The ALJ acknowledged in her decision that Plaintiff's mental impairments did not qualify as severe under the regulation analysis when she stated:

> The claimant has had mild impairment of activities of daily living, mild impairment of social functioning, and mild impairment of concentration, persistence, and pace. <u>All interference with functioning has been related to her drug-seeking behavior</u>. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria [under 20 C.F.R. §404.1520a] are not satisfied.

(Tr. 31) (emphasis added). Despite this finding, the ALJ concluded by noting, "[h]owever, to give the claimant every benefit of the doubt, the undersigned will . . . find that the claimant's mental impairment(s) do not preclude performance of simple routine repetitive tasks which do not involve extensive interpersonal interaction or the stress of working at a production." (Tr. 33). The decision that Plaintiff's depression/anxiety was a severe impairment was linked with Plaintiff's drug-seeking behavior and the effect that such behavior would have upon Plaintiff's ability to function. Based upon substantial evidence within the record that supported the ALJ's conclusion that the Plaintiff exhibited "drug-seeking behaviors," the ALJ rightly concluded that "based on her very long history of Xanax consumption, the undersigned finds that the claimant is a fairly tense individual who becomes more tense and sometimes depressed when under a high level of situational stress." (Tr. 29). The undersigned finds that the ALJ properly identified substantial "evidence [that] otherwise indicate[d] that there [was] more than a minimal limitation in [Plaintiff's] ability to do basic work

activities" when making a determination about the severity of Plaintiff's mental impairment. 20 C.F.R. §404.1520a(d)(1).

###       C.  Evaluating Plaintiff's Subjective Complaints

Next, Plaintiff challenges that the "ALJ erred as a matter of law in evaluating Ms. Taylor's subjective complaints in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. §404.1529 and making a conclusory credibility finding in violation of SSR 96-7p." (Document No. 11, p.14). Plaintiff contends that the ALJ improperly concluded that "nothing she [Plaintiff] has said to doctors since she filed her application in March 2004 and nothing she has told SSA in any written or oral report can be given any weight whatsoever." (Document No. 11, p.14) (citing Tr. 26). Plaintiff argues that the ALJ was required to "provide some reasons for rejecting [Plaintiff's] subjective testimony, and relies on SSR 96-7p in support of this contention:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, "Evaluation of Symptoms in Disability Claims," 1996 WL 374186 at *2 (July 2, 1996); (Document No. 11, p.15).

In addition, Plaintiff also argues that the ALJ improperly discounted Plaintiff's statements made to her treating physician when the ALJ concluded, "[i]n a Social Security disability determination, the issue of credibility is a matter for the Administrative Law Judge, and verbal complaints or behavioral abnormalities do not become any the more credible by being written down

in an examining physician's notes." (Document No. 11, p.16) (citing Tr. 29). Plaintiff contends that

this statement "directly conflicts with the Commissioner's own rules," and again cites to SSR 96-7p:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as:
>
> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> * The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e).

SSR 96-7p, 1996 WL 374186 at *5. (Document No. 11, p.16). Plaintiff contends that the ALJ's

decision to discredit Plaintiff's subjective complaints was not supported by substantial evidence

within the record, and thus remand is necessary. (Document No. 11, pp.15-16).

Defendant argues that the ALJ did properly discredit the subjective complaints of Plaintiff.

Defendant notes, "[t]he credibility of Plaintiff's testimony as to subjective complaints is a matter

for the ALJ to determine. It is not within the Court's province to make its own credibility

determination." (Document No. 15, p.10) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

Defendant then contends that substantial evidence within the record of Plaintiff's drug-seeking

behavior, coupled with numerous instances within the record which sharply question Plaintiff's

honest credibility supported the ALJ's decision to discredit her testimony. (Document No. 15, p.10).

For instance, Defendant notes that the ALJ discredited Plaintiff's subjective complaints about her

observed seizure in February 2002 based upon evidence that the seizure "had occurred after she

abruptly stopped taking Xanax and that subsequent blood testing showed a level of Dilantin [Plaintiff's medication] . . . that was below the therapeutic level." (Document No. 15, p.8) (citing Tr. 21, 286, 287, 391). Further, Defendant notes that "Plaintiff testified that she was being treated by Dr. Cline for a lack of feeling in her legs but that Dr. Cline did not know what was causing it. The medical record, however, shows that Plaintiff's peripheral neuropathy was the result of vitamin B12 deficiency and that with a vitamin supplement it was resolving by June 2007." (Document No. 15, p.9) (citing Tr. 82, 522). Defendant concluded that "the record as a whole reflects negatively on Plaintiff's credibility." (Document No. 15, p.10).

The undersigned finds the Defendant's arguments on this issue to be persuasive. The record supports the ALJ's conclusion, and it is apparent that she relied upon substantial evidence when deciding to discredit the Plaintiff's subjective complaints. SSR 96-7p provides guidance to an ALJ on making a determination about Plaintiff's credibility, and provides in pertinent part:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as:
>
> \* The consistency of the individual's own statements. <u>The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record</u> . . . However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. <u>Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects</u>.

SSR 96-7p, 1996 WL 374186 at *5 (emphasis added).

The undersigned finds that the ALJ identified substantial evidence within the record that conflicted with Plaintiff's subjective complaints. For instance, the ALJ notes the following concerning Plaintiff's testimony about her seizures:

> The claimant testified at the hearing that . . . she is fatigued after a seizure and goes to sleep for a couple hours. It takes her a couple of days to get where she knows what she is doing. This testimony is entirely inconsistent with the record, which shows that she seeks emergency medical treatment when she has a seizure, has failed to report any such episode to any doctor in recent years, has reserved her complaints of seizures for the Administration, and does not see the need to keep up any regular medical therapy for her allegedly severely disabling episodes. The undersigned concludes that the claimant's sworn testimony about her seizures was entirely incredible and entitled to no weight.

(Tr. 23). The ALJ identified multiple instances within the record to support her determination that most of Plaintiff's subjective complaints are linked with her drug-seeking behavior and are not credible, including: Plaintiff visiting multiple doctors to obtain prescriptions, leaving the care of certain physicians after being refused requested medications, visiting multiple ER facilities and requesting specific forms of medication and then leaving when refused the requested medicine, and receiving multiple prescriptions for the same medicines from different physicians' offices. (Tr. 21-29). After a detailed discussion of Plaintiff's behavior as documented within the record, the ALJ concluded:

> The claimant does not have and has never had any problems with headaches, whether post-ictal, migraine, or stress-related in nature. All of her allegations of such symptoms have been inextricably intertwined with her chronic drug-seeking behavior, during which she has been known to see multiple providers in a short period of time despite getting what she wanted, to fill prescriptions from multiple providers in a short period of time, and to make up lies in order to get the medication she wants.

(Tr. 26). The undersigned finds that the ALJ complied with the requirements of SSR 96-7p by "review[ing] the case record to determine whether there [were] any explanations for any variations in the individual's statements about symptoms and their effects." SSR 96-7p, 1996 WL 374186. The ALJ found that the multiple incidences demonstrating Plaintiff's drug-seeking behaviors, coupled with a lack of any other objective medical evidence to support Plaintiff's subjective complaints, was substantial evidence to support a finding that Plaintiff's subjective testimony was not credible.

### D. Failure to Recontact the Plaintiff's Treating Medical Provider

Next, Plaintiff asserts that the ALJ "committed reversible error in failing to recontact the claimant's treating medical provider as required by 20 C.F.R. §404.1512(e)." (Document No. 11, p.16). Plaintiff points to areas within the ALJ's decision in which she comments that Dr. Patel's opinion was unclear. For example, the ALJ wrote:

> When Dr. Patel writes, 'Meds are helping & controls her behavior a great deal,' it cannot be determined whether this is an observation or what the claimant told him. Similarly, in January 2007 he wrote that she had 'psychomotor retardation & depressed mood,' but it is not clear whether Dr. Patel observed this or deduced it from what the claimant told him.

(Tr. 27). Plaintiff argues that the ALJ "had a duty to recontact Dr. Patel to resolve these and other questions she had regarding his treatment records." (Document No. 11, p.17). In support of this contention, Plaintiff relies upon 20 C.F.R. §505.1512(e), which provides:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information

16

we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. §404.1512(e). Plaintiff argues that the ALJ failed to recontact Dr. Patel in order to dispel any questions that she had regarding his opinion.

Defendant argues that the ALJ was not required to recontact Dr. Patel under regulation 20 C.F.R. §404.1512(e) because "such recontact is required . . . only when the evidence received from the doctor is inadequate to make a disability determination." (Document No. 15, p.10). Defendant notes that the ALJ had adequate evidence for her determination in this case, and also cites to the previous discussion about "Dr. Patel's progress notes which do not support the moderately and marked limitations indicated in the June 2007 impairment questionnaire." (Document No. 15, p.10). Defendant argues that since the ALJ properly concluded that Dr. Patel's opinion was entitled to little weight because it frequently contradicted itself, the ALJ was under no duty to recontact Dr. Patel before making a disability determination. (Document No. 15, p.10).

The undersigned finds the Defendant's argument to be persuasive on this issue. In the ALJ's decision, any reference to a lack of clarity within Dr. Patel's opinion relates to the ALJ's concern that Dr. Patel's opinion "reveals very little in the way of observations, as opposed to notations of what the claimant told him." (Tr. 27). The ALJ considered Dr. Patel's opinion in conjunction with the Plaintiff's own subjective testimony since Dr. Patel's records "are based, almost completely, on

the claimant's verbal reports of subjective symptoms and some signs/behaviors that he has observed." (Tr. 29). Furthermore, the ALJ concluded:

> Based on the assessment of credibility in this decision, the undersigned has concluded that statements made by the claimant to SSA and to any doctors she has seen since she filed her disability claim are not credible and are entitled to no weight. The same is true of "signs" that are behaviors within her voluntary control. It follows that Dr. Patel's opinions as to the existence and severity of any diagnosed mental condition are also entitled to very little weight, if any.

(Tr. 29). The ALJ based both of these conclusions upon substantial evidence within the record, and the undersigned is persuaded that any comments about confusion over Dr. Patel's statements are statements by the ALJ to support her conclusion that Dr. Patel's opinion "reveals very little in the way of observations, as opposed to notations of what the claimant told him." Therefore, the ALJ was under no duty to recontact Dr. Patel, and the undersigned will not recommend remand based upon this issue.

## E.  Conflicts Between the Vocational Expert's ("VE") Testimony and the DOT

Next, Plaintiff argues that the ALJ "violated SSR 00-4p and her duty to fully develop the record by failing to examine or inquire of any conflicts between the vocation expert's testimony and the DOT." (Document No. 11, p.18). In particular, Plaintiff notes that the hypothetical posed by the ALJ to the VE contained the following limitations:

> . . . Further assume that the individual retains a residual functional capacity where there are no exertional limitations, but there are the following limitations. On non-exertional limitations, avoid concentrated exposure to hazards such as dangerous machinery and working at unprotected heights. The individual is limited to simpler routine, repetitive tasks. Unable to work at a production rate involving piece work. And limited to jobs not requiring extensive personal interactions. Could such an individual perform any jobs that exist in the state or national economy?

(Tr. 74).  Plaintiff argues that the ALJ did not inquire about any inconsistencies on the record as required by SSR 00-4p.  (Document No. 11, p.19).  Plaintiff also contends that Laundry Worker II, one of the occupations identified by the VE, "require[s] the worker to perform maintenance on the machines by lubricating moving parts. It also requires the worker to be exposed to chemicals such as bleach, dye, neutralizers, and detergents."  (Document No. 11, p.19).  Plaintiff argues that this conflict between the hypothetical posed by the ALJ and the response given by the VE triggered a duty on the part of the ALJ to "inquir[e] as to whether a conflict exists and . . . resolv[e] the conflict," as stipulated in SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, "Use of Vocation Expert . . . In Disability Decisions," 2000 WL 1898704 at *2, 4 (December 4, 2000); (Document No. 11, p.18).

Defendant argues that the ALJ did not violate the requirements of SSR 00-4p, and notes that the ALJ did in fact question the VE about any conflicts that might exist between her testimony and the DOT.  (Document No. 15, p.12) (citing Tr. 73) ("When you're ready, would you summarize for

me the claimant's work background in the last 15 years and tell me as you're testifying if any of the information you are providing is in conflict with the information in the DOT?"). Defendant also contends that the Laundry Worker II position identified by the VE as a possible occupation that met the ALJ's hypothetical was not inconsistent with the DOT. (Document No. 15, p.12). Defendant notes, "Plaintiff's contention that the laundry worker II job is inconsistent with the exclusion of jobs that require exposure to dangerous machinery is not supported by the DOT's ratings of that job. The DOT indicates that the laundry worker II position involves neither exposure to moving mechanical parts nor exposure to toxic/caustic chemicals." (Document No. 15, p.12). Defendant concludes by noting that since the VE's identification of the Laundry Worker II position did not conflict with the DOT, the ALJ was under no duty to "resolve this conflict...and explain the resolution of the conflict." SSR 00-4p, 2000 WL 1898704 at *2, 4.

The undersigned finds the Defendant's argument on this issue to be persuasive. The transcript of the proceeding explicitly demonstrates that the ALJ did in fact question the VE about any conflicts between her testimony and the DOT, thus fulfilling the standard set forth in SSR 00-4p. (Tr. 73). In addition, the DOT provides the following pertinent description regarding the Laundry Worker II requirements:

> Moving Mech. Parts: Not present - Activity or condition does not exist
> High Exposed Places: Not present - Activity or condition does not exist
> Toxic Caustic Chem.: Not present - Activity or condition does not exist

(Document No. 11-2, p.4) (emphasis added). Based upon this information contained within the DOT, the undersigned does not find that the VE's testimony conflicted with either the ALJ's hypothetical or the DOT. It is apparent from the record that the ALJ relied on substantial evidence

within the record and on the testimony provided by the VE in reaching her conclusion that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 35).

### F. Subsequent Favorable Disability Decision Dated October 8, 2009

Finally, Plaintiff argues in a "Status Report" submitted on September 8, 2010, that "new and material evidence in the form of a subsequent Fully-Favorable Decision dated October 8, 2009, finding that Ms. Taylor was disabled requires that the decision be remanded solely for reconsideration of the onset date." (Document No. 16, p.1). Plaintiff points to a favorably decided SSI application "as to the month of her subsequent application, January 14, 2009. This was the earliest possible date that could be considered on that application." (Document No. 16, p.1). Plaintiff contends that "remand is warranted 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" (Document No. 16, p.1) (citing 28 U.S.C. §405(g)). Plaintiff argues that this new evidence "must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time." (Document No. 16, p.2).

In addition, Plaintiff presents a new argument within the "Status Report" arguing that at the time of the ALJ's decision, Plaintiff was within three months of her fiftieth birthday. Plaintiff argues that "the age requirements set forth in the grids are not to be applied in mechanical fashion, and that in borderline cases, a grid rule may be applied early." (Document No. 16, p.2). Plaintiff essentially argues that the ALJ erred in rigidly applying the Grids when determining whether or not Plaintiff was capable of performing any type of occupation.

Defendant contends that the favorable decision by the SSA that Plaintiff is disabled as of January 14, 2009, is immaterial to the present case because "there is no indication of any evidence

that relates to the period through February 8, 2008, when [the ALJ] . . . issued the decision that is under judicial review." (Document No. 17, p.1).

With respect to Plaintiff's second argument presented within her "Status Report," Defendant notes first that "any such argument was waived because Plaintiff failed to present it in her June 19, 2009, memorandum in support of her motion for summary judgment." (Document No. 17, p.2) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)). Defendant also notes that Plaintiff's contention regarding the use of the Grid system by the ALJ is unfounded because "ALJ Palenske did not decide this case through application of the Grid rules, mechanically or otherwise. [S]he obtained vocational testimony from Beverly Carlton to determine the extent to which Plaintiff's non-exertional limitations reduced the range of work that Plaintiff could perform and whether there remained jobs that existed in significant numbers in the national economy that she could perform." (Document No. 17, p.3) (citing Tr. 73-77).

The undersigned finds Defendant's arguments on both issues presented in Plaintiff's "Status Report" to be persuasive. Plaintiff herself recognizes in her "Status Report" that "the new evidence must relate to the period on or before the date of the administrative law judge hearing decision." (Document No. 16, p.1) (citing 20 C.F.R. §404.970(b)). However, Plaintiff fails to discuss any possible reason why this later disability determination, which concerns a period of time nearly eleven months after the ALJ's final determination was issued on February 5, 2008, relates to the decision before this Court. In addition, the undersigned is not persuaded by Plaintiff's second argument discussing the use of the Grid technique by the ALJ. In her decision, the ALJ noted, "[b]ased on the testimony of the vocation expert, the undersigned concludes that . . . the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 35). The record establishes that the ALJ relied on substantial evidence and

the testimony of the VE in making her decision, and not on a rigid application of the Grid rules; therefore, Plaintiff's new contention in the "Status Report" is without merit.  (Tr. 35).

## IV.  CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 10) be **DENIED**;  Defendant Commissioner's "Motion For Summary Judgment" (Document No. 14)  be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Diamond</u>, 416 F.3d at 316;  <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  <u>Snyder v. Ridenhour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989);  <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard L. Voorhees.

**IT IS SO RECOMMENDED**.

Signed: July 5, 2011

David C. Keesler
United States Magistrate Judge